**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
-----------------------------------------------------------x

GLENDA DELGADO,

                      Plaintiff,

       -against-

REM NEW JERSEY INC., STEVEN BAYER, INDIVIDUALLY, AND SUSAN MCCARTHY, INDIVIDUALLY,

                      Defendants.

-----------------------------------------------------------x

**COMPLAINT**

Civil Action No.

**July Trial Demanded**

      Plaintiff Glenda Delgado ("Plaintiff"), by and through her attorneys, Philip G. Pizzuto Law Group LLC, upon personal knowledge as to herself and upon information and belief as to other matters, brings this Complaint against defendants REM New Jersey, Inc., Steven Bayer, Individually, and Susan McCarthy, Individually (collectively "Defendants"), and alleges as follows:

## INTRODUCTION

      1.     Plaintiff brings this lawsuit seeking recovery against Defendants for Defendants' violations of the Family Medical Leave Act of 1993, 29 U.S.C. §§ 2601 *et seq.* ("FMLA") and for Defendants' violations of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -49 ("NJLAD").

      2.     Plaintiff seeks economic, compensatory, liquidated damages, attorneys' fees, punitive damages, and other appropriate legal and equitable relief pursuant to federal law.

## JURISDICTION AND VENUE

1

3. This Court has subject matter jurisdiction over Plaintiff's FMLA claims pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 2617(a) and 42 U.S.C § 12117.

4. This Court has subject matter jurisdiction over Plaintiff's NJLAD claims pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1367.

5. Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

6. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 2202.

## PARTIES

**Defendants**

**Defendant REM New Jersey Inc.**

7. Defendant REM New Jersey, Inc. (REM NJ) is a domestic limited liability company with a main business address 80 Cottontail Lane, Somerset New Jersey 08873.

8. At all times relevant to this Complaint, Defendant REM NJ was and is a covered employer within the meaning of the FMLA, 29 U.S.C. § 2611 (4) and, at all times relevant to this Complaint, employed employees, including Plaintiff.

9. At all times relevant to this Complaint, Defendant REM NJ was and is an employer as that term is defined by NJLAD, N.J.S.A. 10:5-5(e).

**Defendant Steven Bayer, D.C.**

10. Upon information and belief, Defendant Bayer was a Regional Director of REM NJ.

11. At all times relevant to this Complaint, Defendant Bayer was Plaintiff's direct supervisor.

12. At all times relevant to this Complaint, Defendant Bayer was and is a covered employer within the meaning of the FMLA, 29 U.S.C. § 2611 (4) and, at all times relevant to this Complaint, employed Plaintiff.

13. At all times relevant to this Complaint, Defendant Bayer had power over personnel decisions at REM NJ, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

14. Upon information and belief, at all times relevant to this Complaint, Defendant Bayer was actively involved in managing the day-to-day operations of REM NJ.

15. At all times relevant to this Complaint Defendant Bayer was, and continues to be, an employer within the meaning of the NJLAD, N.J.S.A. 10:5-5(e).

**Defendant Susan McCarthy, D.C.**

16. Upon information and belief, Defendant McCarthy was an Executive Director of REM NJ.

17. At all times relevant to this Complaint, Defendant McCarthy was and is a covered employer within the meaning of the FMLA, 29 U.S.C. § 2611 (4) and, at all times relevant to this Complaint, employed Plaintiff.

18. At all times relevant to this Complaint, Defendant McCarthy had power over personnel decisions at REM NJ, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

19. Upon information and belief, at all times relevant to this Complaint, Defendant McCarthy was actively involved in managing the day-to-day operations of REM NJ.

20. At all times relevant to this Complaint Defendant McCarthy was, and continues to be, an employer within the meaning of the NJLAD, N.J.S.A. 10:5-5(e).

**Plaintiff Glenda Delgado**

21. Plaintiff is a resident of Middlesex County, New Jersey.

22. Plaintiff is a qualified individual with a disability.

23. Plaintiff is Hispanic.

## FACTUAL ALLEGATIONS

24. At all times relevant to this Complaint, Plaintiff performed her duties in Defendants' workforce fully, faithfully, efficiently, and, moreover, performed all of her duties at a level that met or exceeded Defendants' reasonable business expectations.

25. Plaintiff was employed from December 2012 until on or about September 21, 2020, when she was constructively terminated.

26. Plaintiff was initially employed by Defendants as a Program Director at REM NJ beginning in December 2012 and was, eventually, elevated to the position of an Area Director in 2018.

27. Plaintiff remained in the position of Area Director until her constructive termination on September 21, 2020.

28. Defendants did the following acts knowingly and willfully.

**Disability Discrimination**

29. At all times relevant to this Complaint, Plaintiff consistently performed her job duties in an exemplary manner throughout her tenure with Defendant REM NJ.

30. In fact, in Plaintiff's September 2019 performance review, she was commended for having strong relationships with external agencies, building a nice network with colleagues, and training her staff in exemplary fashion.

31. Plaintiff's September 2019 performance review also noted that Plaintiff consistently exceed in areas such as taking responsibility for her work, encouraged the decision-making of others, handled her staff, and took accountability of her work and team.

32. On or about June 18, 2020, Plaintiff required medical leave for anxiety and knee pain from a work-related incident.

33. Plaintiff complied with all policies and procedures in requesting and taking medical leave.

34. Defendants approved Plaintiff's request for medical leave.

35. While on medical leave, Plaintiff had an MRI of her knee on or about June 22, 2020 and learned that she required knee surgery.

36. Plaintiff scheduled right knee surgery on July 16, 2020.

37. Plaintiff complied with all policies and procedures in requesting and taking additional medical leave.

38. Plaintiff's request for additional medical leave was approved, and Defendants extended her leave until August 31, 2020.

39. Plaintiff was ready, willing, and able to return to work on August 31, 2020, as scheduled.

40. Defendants were aware that Plaintiff was able and prepared to return to work on August 31, 2020.

41. However, on August 26, 2020, Plaintiff was informed by Defendant Bayer, that she needed to meet with him prior to her return to the office on August 31st.

42. Plaintiff inquired as to why Defendant Bayer wanted to meet, but Plaintiff was not given any specifics.

43. Based upon Defendant REM NJ's history of discriminating against employees who took time off for medical reasons, Plaintiff was concerned that Defendants would now retaliate against her because she required, and took, protected medical leave.

44. On August 31, 2020, as Plaintiff attempted to return to work, Plaintiff was directed by Defendant Bayer to meet with her and Defendant McCarthy, Defendant REM NJ's Executive Director, in the early afternoon.

45. When Plaintiff met with Defendant Bayer and Defendant McCarthy, she was advised that they disapproved of the way she left prior to her medical leave; i.e., not advising them specifically of why she required medical leave and the specifics about her medical condition, despite the fact that (i) Plaintiff followed Defendant REM NJ's proper procedure, informed Human Resources of her request to take medical leave, and provided medical confirmation from her doctors throughout every step of her leave, and (ii) her leave was approved by the Company.

46. During the aforementioned meeting, Plaintiff was chastised for taking company-approved and legally protected medical leave.

47. Defendant Bayer and Defendant McCarthy claimed that, by taking medical leave, it appeared to them that Plaintiff did not take her work responsibilities seriously.

48. Even though Plaintiff complied with all written policies and procedures in requesting medical leave, Defendant Bayer and Defendant McCarthy admonished Plaintiff for purportedly not sending an additional email regarding her medical leave that was not required by Company policy.

49. Defendant Bayer and Defendant McCarthy also chastised Plaintiff for having initiated a worker's compensation claim against the Company for her work-related injury.

50. Defendant Bayer and Defendant McCarthy angrily yelled at Plaintiff, "You sued us!" in regard to the worker's compensation claim.

51. After Plaintiff told Defendant Bayer and Defendant McCarthy that she did not want to discuss her worker's compensation claim, Defendant Bayer and Defendant McCarthy became even more irate with Plaintiff.

52. Defendant Bayer and Defendant McCarthy began giving Plaintiff unwarranted criticism, asserting generalized complaints against her from her team.

53. Defendant Bayer's and Defendant McCarthy's comments were an overt act of discrimination and retaliation and in direct violation of disability discrimination laws and the FMLA.

54. Plaintiff questioned Defendants' assertion that all of her direct reports no longer wanted to work with her after she returned from her medical leave, when Plaintiff had been very supportive of her team at all times and had not had any such issues prior to her medical leave.

55. Plaintiff had excellent feedback and performance reviews prior to having taken her medical leave.

56. Defendants' allegations were particularly troubling because Plaintiff had been directed to "clean house", and Defendants previously commended Plaintiff for her "tough" demeanor and management style as it led to Defendant REM being more profitable and successful.

57. Despite disagreeing with Defendants' unwarranted criticism, Plaintiff expressed a desire to improve any purported performance issues and requested training to assist her.

58. Defendant Bayer and Defendant McCarthy refused to provide Plaintiff with any training.

59. Plaintiff informed both Defendant Bayer and Defendant McCarthy that she was being harassed, discriminated and retaliated against because of her disability and for taking approved medical leave.

60. Plaintiff complained that it was "apparent" that Defendants were "setting [her] up to be terminated."

61. Defendant Bayer and Defendant McCarthy failed to take any steps to meaningfully investigate Plaintiff's allegations of discrimination and harassment.

62. Defendant Bayer and Defendant McCarthy failed to take any steps reasonably calculated to remedy the discrimination and harassment that Plaintiff suffered.

63. On September 1, 2020, Plaintiff was again asked to meet virtually with both Defendant Bayer and Defendant McCarthy.

64. At the September 1st meeting, Defendant McCarthy advised Plaintiff that Defendant REM NJ would offer her a severance agreement in exchange for her resignation, despite the fact that Plaintiff never indicated a desire to resign.

65. Defendants were attempting to rid themselves of Plaintiff for discriminatory and retaliatory reasons.

66. When Plaintiff refused to resign, Defendant McCarthy told her that she would speak with Defendant REM NJ's administration and get back to her.

67. Defendant McCarthy additionally instructed Plaintiff not to report to work until further notice.

68. Despite Plaintiff's clear objections to resigning from her position and her complaints of discrimination and retaliation, on September 15, 2020, Plaintiff was sent the severance agreement.

69. Plaintiff again informed Defendant McCarthy that she had no intention of resigning and was "ready to return to work".

70. Defendant McCarthy informed Plaintiff that if she did not accept the severance agreement, she would then be placed on a performance improvement plan ("PIP") which would be formalized by both Defendant McCarthy and Defendant Bayer.

71. On September 17, 2020, Plaintiff received an email from Defendant McCarthy informing her that Defendant McCarthy and Defendant Bayer would meet with Plaintiff to discuss the PIP on Monday, September 21, 2020 and that upon Plaintiff's review of the PIP, she "could return to work."

72. On September 21, 2020, at the meeting, Plaintiff was given an outline describing the PIP and was told to sign the PIP immediately.

73. The PIP was baseless, entirely unwarranted, and notably inconsistent with the performance reviews Plaintiff had received for the previous assessment year.

74. During the September 21st meeting, Defendant McCarthy raised ambiguous and vague concerns to Plaintiff that her direct reports raised concerns about her communication skills and that they did not feel supported.

75. Plaintiff requested the Defendant McCarthy provide some specifics about such complaints and concerns against her, but Defendant McCarthy dismissed her requests and told Plaintiff to focus on the PIP, which itself was clearly pretextual as it lacked any specificity or guidance.

76. During the September 21st meeting, Plaintiff reiterated her complaints regarding Defendants' discriminatory and retaliatory actions.

77. Plaintiff told Defendant McCarthy and Defendant Bayer that she believed that the PIP was being issued because of her disability and her national origin, and that she was being retaliated against for taking medical leave.

78. Specifically, Plaintiff told Defendant McCarthy and Defendant Bayer, "I just want to say that I feel that I am being discriminated against because I went out on medical leave. . . . I just feel that I am being discriminated against because of my disability. I feel that I am being discriminated against because of my national origin."

79. Nevertheless, Plaintiff indicated that she would do whatever was necessary to keep her job and asked for time to review the PIP prior to executing.

80. Defendant McCarthy told Plaintiff that she could review the PIP but that it needed to be executed before Plaintiff could return to work.

81. The meeting ended after Defendant McCarthy demanded Plaintiff sign the PIP as a precondition of returning to work.

82. Defendants again failed to take any actions to prevent further harassment, discrimination or retaliation.

83. Defendants again failed to take any steps to investigate Plaintiff's complaints.

84. Instead, Defendants retaliated against Plaintiff for her complaints and terminated her for making said complaints.

85. Within an hour of the meeting, Plaintiff received a call from Defendant McCarthy informing her that the PIP was being revoked and that Plaintiff was instead being terminated.

86. Immediately following Defendant McCarthy's call to Plaintiff informing Plaintiff that she was terminated, Defendant McCarthy sent Plaintiff an email with a severance agreement.

87. Plaintiff was traumatized as the termination was an obvious and unmistakable result of her complaining of disability and national origin discrimination and retaliation for engaging in protected activity.

88. When Plaintiff sought to confirm the basis for her termination and specifically why the Company was retracting the PIP and terminating her, Defendant McCarthy refused to provide any non-discriminatory, non-retaliatory basis for the termination.

89. The harassment, discrimination, and retaliation of Plaintiff was severe and pervasive.

90. The harassment, discrimination, and retaliation of Plaintiff substantially altered the conditions of Plaintiff's employment in a manner that was adverse to Plaintiff.

91. The harassment, discrimination, and retaliation that Plaintiff was subjected to increased so much that no reasonable individual should be expected to endure such treatment.

**FIRST CAUSE OF ACTION**
**(Violations of the FMLA, 29 U.S.C. §§ 2601 *et seq.* – Failure to provide Restoration to the Employment Position)**
**(Against All Defendants)**

92. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

93. At all times relevant to this action, Defendants were engaged in commerce or the production of goods for commerce within the meaning of 29 U.S.C. §§ 2611 and/or were employed in an enterprise engaged in commerce for the production of goods for commerce within the meaning of 29 U.S.C. §§ 2611.

94. Plaintiff was not exempt from the Family Medical Leave Act.

95. The provisions set forth in the FMLA, 29 U.S.C. §§ 2601 *et seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiff.

96. Throughout the statute of limitations period covered by these claims, Plaintiff was not restored to the position held by the Plaintiff before the leave commenced or to any equivalent position, on her return from the medical leave.

97. Defendants have failed to restore Plaintiff to the position held by the Plaintiff before the leave commenced or to any equivalent position with equal employment benefit, on her return from the medical leave.

98. At all relevant times, Defendants had and operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines, and rules of willfully failing and refusing to restore Plaintiff to the employment position and willfully failing to keep records required by the FMLA even though Plaintiffs was entitled to restoration to the position she held before her medical leave commenced.

99. The foregoing conduct, as alleged, constitutes a Prohibited Act in violation of the FMLA within the meaning of 29 U.S.C. § 2615. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful. Defendants have not made a good faith effort to comply with the FMLA with respect to the restoration of Plaintiff.

100. Because Defendants' violations of the FMLA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 2615.

101. Defendants' failure to comply with the FMLA caused Plaintiff to suffer loss of employment and benefits thereon.

102. Due to Defendants' FMLA violations, Plaintiff is entitled to restoration to the employment position, she held before her medical leave commenced, her unpaid wages/salary,

employment benefits for the period she was unlawfully unemployed, an additional, equal amount as liquidated damages for Defendants' willful violations of the FMLA, together with interest, reasonable attorneys' fees, costs and disbursements in connection with this action, pursuant to 29 U.S.C. § 2617.

## SECOND CAUSE OF ACTION
### (Violation of NJLAD, N.J.S.A. 10:5-1 *et seq.* – Disability Discrimination)
### (Against All Defendants)

103. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

104. At all times relevant to this complaint, Defendants were and are "employers" within the meaning of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.*

105. At all times relevant to this Complaint, Plaintiff was "disabled" within the meaning of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.*

106. Discrimination on the basis of disability is actionable under NJLAD.

107. As a disabled individual, Plaintiff belongs to the group protected by NJLAD.

108. Plaintiff was subjected to harassment and a hostile work environment based on her disability.

109. The harassment was sufficiently severe or pervasive to materially alter the terms and conditions of Plaintiff's employment and to create a discriminatorily abusive working environment.

110. At all times relevant to this Complaint, Defendants' discrimination against Plaintiff based on her disability substantially and materially altered Plaintiff's conditions of employment in ways that were adverse to Plaintiff.

111. Defendants discriminated against Plaintiff because of her disability by subjecting Plaintiff to harassment.

112. Defendants discriminated against Plaintiff by refusing to offer Plaintiff reasonable accommodations.

113. Defendants engaged in unlawful employment practices and unlawful discrimination as those term are defined by the NJLAD, N.J.S.A. 10:5-12.

114. These acts violate NJLAD and are illegal.

115. In taking the above-described discriminatory actions, the Defendants acted with malice and reckless indifference to Plaintiff's rights pursuant to NJLAD giving rise to punitive damages.

116. As a direct and proximate result of Defendants' aforementioned discriminatory conduct, Plaintiff suffered monetary damages, as well as humiliation, emotional distress, mental anguish and suffering, and damage to her professional reputation.

### THIRD CAUSE OF ACTION
### (Retaliation Under NJLAD)
### (Against All Defendants)

117. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

118. At various times during her employment with Defendants, Plaintiff raised complaints that Defendants were unlawfully discriminating against her on the basis of her disability and national origin.

119. At various times during her employment Plaintiff raised complaints with Defendants concerning severe and pervasive discrimination.

120. Whenever Plaintiff raised these complaints, Defendants failed to meaningfully investigate Plaintiff's complaints or take any action reasonably calculated to remedy the unlawful discrimination plaintiff complained of.

121. Instead, Defendants immediately responded by escalating their harassment Plaintiff.

122. In retaliation for her complaints, Defendants discharged Plaintiff on September 21, 2020.

123. Defendants' harassment and discharge of Plaintiff, and other retaliatory acts following her complaints of unlawful discrimination are in direct violation of Plaintiff's rights under NJLAD, N.J.S.A. 10:5-12.

124. Plaintiff engaged in the protected activity of complaining to her employer regarding issues of unlawful discrimination on the basis of her disability.  A causal link exists between the protected activity and adverse employment action as Defendants knew of Plaintiff's activities and complaints, and Defendants' retaliatory acts were a direct result of such complaints.

125. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered irreparable injuries and damages.

126. Plaintiff seeks relief as provided by the NJLAD, including, without limitation, backpay for lost wages, commissions, or diminishment, loss of other benefits, and any and all such legal or equitable relief as may be appropriate to effectuate for purposes of the NJLAD, including but not limited to compensatory damages for mental anguish and emotional distress and other injuries incurred as a result of the retaliation.

127. As Defendants' retaliatory actions, including but not limited to the retaliatory discharge of Plaintiff, were willful, malicious, and/or with conscious disregard of plaintiff's statutorily protected rights, Plaintiff is entitled to an award of punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that judgment be entered on her behalf in accordance with the above claimed causes of action and requests the following:

A. All compensatory and economic damages;

B. All reasonable expenses incurred by Plaintiffs, including court costs and other relief, both in law and equity, to which Plaintiff may show herself justly entitled;

C. Attorneys' fees, including attorneys' fees as provided by statute;

D. Punitive and statutory damages as authorized by law;

E. Pre-judgment and post-judgment interest; and

F. Such further relief as the Court finds just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which she has a right to jury trial.

DATED:     Basking Ridge, New Jersey
           July 31, 2021

                                            PGP Law Group, LLC
                                            Attorneys for Plaintiff
                                            40 Meeker Road
                                            Basking Ridge, New Jersey 07920
                                            Tel: (908) 509-4303
                                            Fax: (908) 441-8685

                                            *[signature]*

                                            _____

                         By:    PHILIP G. PIZZUTO, ESQ.
                              ppizzuto@pgplawgroup.com